**Ex parte Rene Zuniga GUZMAN**

**No. 54253.**

Court of Criminal Appeals of Texas.

May 25, 1977.

Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is an application for writ of habeas corpus filed pursuant to Art. 11.07, V.A.C. C.P.

Petitioner was convicted of the offense of assault to rob in Cause No. 8468, on his plea of guilty to the court, on June 11, 1959, at which time the court assessed a four (4) year sentence, probated. Subsequently, on June 15, 1961, petitioner's probation was revoked, and no appeal of this revocation order was perfected.

Petitioner filed an application for writ of habeas corpus with the trial court, alleging that at the time of his probation revocation hearing in 1961 he was not represented by counsel and was not advised of his right to counsel at that proceeding, therefore contending that he did not voluntarily and knowingly waive his right to counsel. The trial court originally denied the application for writ of habeas corpus, finding that the application for writ of habeas corpus was *moot,* since petitioner was no longer held in custody of that conviction, said conviction long since being discharged.

This Court remanded the case back to the trial court for further proceedings to determine the merits of petitioner's contentions, noting that prior convictions that had been discharged may have serious collateral consequences to a criminal defendant, thus the *mootness doctrine* cannot prohibit a collateral attack. See *Ex parte Burt,* 499 S.W.2d 109 (Tex.Cr.App.1973); *Ex parte Jentsch,* 510 S.W.2d 320 (Tex.Cr.App.1974); *Ex parte Langston,* 510 S.W.2d 603 (Tex.Cr. App.1974).

On remand, the trial court found that petitioner was not represented by counsel at the time of this probation revocation proceeding, was indigent, and did not waive counsel. The records before this Court corroborate the petitioner's pleadings and the trial court's findings. See *Ex parte Stauts,* 482 S.W.2d 638 (Tex.Cr.App.1972); *Ex parte Williams,* 486 S.W.2d 566 (Tex.Cr. App.1972). Therefore, we hold that the order of revocation has been rendered void by petitioner's showing that he was denied his right to counsel at that proceeding. See *Ex parte Herrera,* 493 S.W.2d 809 (Tex.Cr.App. 1973); *Ex parte Shivers,* 501 S.W.2d 898 (Tex.Cr.App.1973); *Bray v. State,* 531 S.W.2d 633 (Tex.Cr.App.1976); *Ex parte Bird,* 457 S.W.2d 559 (Tex.Cr.App.1970); *Ex parte Flores,* 537 S.W.2d 458 (Tex.Cr.App. 1976).

Accordingly, the application for writ of habeas corpus is granted, and the order of revocation in Cause No. 8468 is hereby set aside.

Opinion approved by the Court.

ODOM, Judge, concurring.

The dissent concedes that petitioner's habeas corpus application is not moot and that "[S]ufficient collateral consequences flow

from the discharged[1] conviction" to defeat the State's claim of mootness. Yet the dissent would deny petitioner a forum to raise his viable claim by finding those very collateral consequences that defeat mootness are insufficient to support jurisdiction. This is a distinction without a difference. If the restraints of collateral consequences are sufficient to defeat mootness, they are sufficient to support the exercise of habeas corpus jurisdiction. The Code provides as much and justice and reason permit no less.

Chapter 11 of the Code of Criminal Procedure states the rules governing habeas corpus. Article 11.64 therein addresses the application of the chapter:

"This Chapter applies to all cases of habeas corpus for the enlargement of persons illegally held in custody *or in any manner restrained in their personal liberty,* for the admission of prisoners to bail, and for the discharge of prisoners before indictment upon a hearing of the testimony. . . ." (Emphasis added.)

Article 11.23, V.A.C.C.P., states the scope of the writ:

"The writ of habeas corpus is intended to be applicable to all such cases of confinement *and restraint,* where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law." (Emphasis added.)

Restraint is defined in Article 11.22, V.A.C.C.P.:

"By 'restraint' is meant the kind of control which one person exercises over another, *not* to confine him within certain limits, *but to subject him to the general authority and power of the person claiming such right.*" (Emphasis added.)

Article 11.04, V.A.C.C.P., tells us how these provisions are to be construed:

"Every provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it."

The dissent would restrict the remedy in violation of the mandate of Art. 11.04, supra. In disregard of the broad definition of "restraint" in Art. 11.22, supra, the dissent would hold the collateral consequences of the prior conviction, imposed under the general authority and power of the State of Texas as a direct and enduring restraint on petitioner's liberty, may not be tested in the courts of this State. The availability of the writ of habeas corpus to challenge any manner of restraint on personal liberty, as confirmed by the terms of Arts. 11.64 and 11.23, supra, would be abolished by the restrictive innovations urged by the dissent.

In *Ex parte Snodgrass,* 43 Tex.Cr.R. 359, 65 S.W. 1061, the Court considered the last above-quoted provisions of the Code of Criminal Procedure and declared:

"We deem it unnecessary to enter into a long discussion of these articles, but suffice it to say that *any character or kind of restraint that precludes an absolute and perfect freedom of action* on the part of relator authorizes such relator to make application to this court for release from said restraint." (Emphasis added.)

The dissent, apparently, also finds it "unnecessary to enter into a long discussion of these articles" before restricting the scope of the writ to "a remedy for severe restraints on individual liberty." Since enactment of these statutes in 1856, the writ has never been limited to cases of "severe restraints on individual liberty," but has been available to those who are "in any manner restrained in their personal liberty". Art. 11.64, supra. The dissent would strike these words from the statute as though they were never written, erroneously asserting that the exercise of our jurisdiction in this case "would be an exercise in futility amounting to absolutely nothing." The dissent urges an unauthorized restriction of habeas corpus jurisdiction that not only

---

1. Although petitioner has discharged the term assessed against him in the conviction under attack, it appears from the record before us that he is nevertheless confined in the Department of Corrections under another conviction. The dissent has not distinguished *Ex parte Langston,* Tex.Cr.App., 510 S.W.2d 603, and Tex.Cr.App., 511 S.W.2d 936.

would abolish protections of longstanding legislative mandate, but would also erode the constitutional mandate of Section 12 of the Texas Bill of Rights (Art. 1, Sec. 12, Texas Constitution), which declares, "The writ of habeas corpus is a writ of right, and shall never be suspended."

I concur in the majority's rejection of the dissent's unwarranted and insupportable assault on the Great Writ's protection, today and for the future, of the liberties of all Texans.

PHILLIPS, J., joins in this opinion.

DOUGLAS, Judge, dissenting.

This case concerns the scope of the habeas corpus statutes.

Article 11.01, V.A.C.C.P., provides:

"The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint."

Article 11.23, V.A.C.C.P., provides:

"The writ of habeas corpus is intended to be applicable to all such cases of confinement and restraint, where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law."

And Article 11.64, V.A.C.C.P., provides in pertinent part:

"This Chapter applies to all cases of habeas corpus for the enlargement of persons illegally held in custody or in any manner restrained in their personal liberty, for the admission of prisoners to bail, and for the discharge of prisoners before indictment upon a hearing of the testimony. . . ."

Applicant contends that the statute authorizes an attack upon a probation revocation order even though applicant Guzman was unconditionally released from custody before the petition for writ of habeas corpus was filed. This contention is compelled neither by history nor statute and, if accepted, would result in an unwarranted expansion of habeas corpus jurisdiction of Texas courts.

Guzman's release from custody was pursuant to the discharge of the conviction. His habeas claim is not moot because sufficient collateral consequences flow from the discharged conviction to foreclose that issue. See *St. Pierre v. United States,* 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943); *Fiswick v. United States,* 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); and *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

However, mootness is not the real issue before us. The statute requires that the applicant must be "in custody or under restraint" when the petition for writ of habeas corpus is filed. This is required not only by repeated references in the statute,[1] but also by the history of the great writ.[2] The writ's province, "shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." *Carafas v. LaVallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554, 559 (1968) (footnotes omitted). *See also Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); and *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Therefore, the petition now before us, having been filed at a time when Guzman had been unconditionally released from custody,

---

1. See Articles 11.01, 11.02, 11.07, 11.08, 11.09, 11.14, 11.16, 11.17, 11.18, 11.19, 11.21, 11.22, 11.23, 11.27, 11.30, 11.31, 11.32, 11.33, 11.34, 11.35, 11.37, 11.38, 11.40, 11.42, 11.44, 11.45, 11.46, 11.56, 11.57, 11.61, 11.62, and 11.64, V.A. C.C.P.

2. See 9 W. Holdsworth, History of English Law 108–125 (1926); 4 W. Blackstone, Commentaries 131–134.

was without the jurisdiction of the trial court.

In the recent decision of *Kravitz v. Pennsylvania,* 546 F.2d 1100 (3rd Cir. 1977) the petitioner, after she had been released on parole, filed for habeas corpus relief in a federal court to rid herself of the collateral consequences of her 1959 conviction for murder. The court in dismissing the petition wrote:

"Federal habeas jurisdiction extends to a petitioner who claims that he is in custody in violation of the Constitution, treaties or laws of the United States; see 28 U.S.C. § 2254. The in-custody requirement has been given broad construction providing the federal writ with an expansive reach. The custody prerequisite has encompassed defendants on parole, on bail or on probation. In these instances, extension of the writ rested on the premise that inherent restraints exist in the usual conditional release on probation, parole and bail.

"*However, the custody prerequisite has never been satisfied by a petitioner whose habeas claim followed his unconditional release from custody.*

"The thought has been advanced that Mrs. Kravitz' prior petition, dismissed in part on the merits and in part for lack of exhaustion of state remedies, relieves her of meeting the present custody requirement at the time of filing the petition under review. This is premised on the lack of mootness of her claim. * * * *But our statutes conferring habeas jurisdiction do not confer power to entertain claims on the ground that they are not moot. They authorize jurisdiction only where the petitioner is 'in custody.'*" (Emphasis added).

Likewise, the Texas statute authorizes jurisdiction only where the applicant is "in custody" or "under restraint" or "is confined."[3]

Before today's holding there was no authority to the contrary. *Ex parte Burt,* 499 S.W.2d 109 (Tex.Cr.App.1973), and *Ex parte*

*Langston,* 510 S.W.2d 603 (Tex.Cr.App. 1974), appeal after remand Tex.Cr.App., 511 S.W.2d 936, held only that once habeas corpus jurisdiction has attached the applicant's subsequent unconditional release from custody will not render the case moot if there are collateral consequences stemming from the conviction. Nothing stated in those cases alters the requirement that the applicant be in custody when the petition is filed. See *Carafas v. LaVallee, supra,* and the discussion contained therein. *Ex parte Jentsch,* 510 S.W.2d 320 (Tex.Cr.App.1974), is inapposite. The applicant in that case was confined throughout the habeas corpus proceedings.

The great writ has played a crucial role in the protection of human freedom and has been utilized by the judiciary as its fundamental instrument for lifting undue restraints upon personal liberty. As a result the "in custody" requirement of the statute is designed to preserve the writ as a remedy for severe restraints on individual liberty. See *Hensley v. Municipal Court, San Jose Milpitas J.D., Cal.,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

Constitutional revisions have been proposed and bills have been introduced in the Legislature to ease the work load of this Court. The majority in considering cases such as this is making the situation worse.

Applicant alleges that he had a burglary conviction in 1961. He does not attack that conviction. The granting of relief or setting aside the conviction complained of would be an exercise in futility amounting to absolutely nothing. Since he has another conviction, no civil or any other right would be impaired by denying the relief sought. If there is an attempt to use the 1959 conviction against him in the future, he can challenge it then. We should not assume that he will commit another offense, and further assume that it will be wrongfully used against him.

We have more to do than to take jurisdiction, especially without authority, to clear someone's name when there is no pending threat of confinement in the case attacked.

3. See Article 11.21, V.A.C.C.P.

Quite a few people think that O. Henry (William Sydney Porter) was unlawfully convicted for embezzlement. Even though he is dead and even though he was tried in a federal court and his case was affirmed on appeal, *Porter v. United States,* 91 F. 494 (5th Cir. 1898), the majority after the decision today should probably review his case in an effort to see if his name might be cleared. It would do about as much good as the granting of the relief in the present case.

The relief sought should be denied.